17-4209 David Sherratt, the last years of school, the Art Institute of Chicago Okay, will counsel and Razavi please approach? Good morning, your honors. May it please the court? Good morning, your honor. Hannah Roberts here on behalf of Iva Walkoski Good morning, your honor. This is Sarah here for the case. And Deidre Baumann for appellant. Alright, and keeping in mind that we have read the briefs and we are intimately familiar with your case and there's quite a bit of overlap between the two defendants. Ms. Baumann, how much time would you like? Ten minutes. Alright, and a few minutes for rebuttal? Correct. Okay. We'll take 15 minutes and I'll be handing the argument for both of the appellees. Okay, great. Alright, and as I'm sure you know, the microphones in front of you are for recording only. They are not for amplification, so if you would keep your voices up, we'd appreciate it. And Ms. Baumann, if you'd like to proceed. Thank you. As this court well knows, it very narrowly made a holding in what we'll call Resolve 1, if that's acceptable. The court narrowly held that statements to campus security for the purpose of initiating legal proceedings are absolutely privileged. And if your Honors recall, although Honor Paczynski was not here for Resolve 1, we talked about public policy and why there was good public policy reasons, arguably, to extend the law enforcement privilege to campus security. That's what we came up with. You didn't agree with it. Okay, but I conceded that there were arguments, although you're right, I did not agree with that, that there were arguments in favor of it. But I think you very wisely added the caveat for the purpose of initiating legal proceedings, because that's what is important here. And you also held that presumptively Ms. Wachowski was initiating legal proceedings when she went to campus security. I disagree with that as well, but there are reasons, good reasons, for she had an affidavit stating that she went to campus security in lieu of the police. So she did that. But what happened to those proceedings if they are, quote, legal proceedings? And going to the police would, of course, be a legal proceeding. She went with campus security. She went to the police. The record is silent as to what happened at the police station. It's silent as to any criminal charges. It's silent as to anything the state's attorney may have considered. And as I noted in my brief, my client was not even interviewed with regard to allegations she made to the police. So that is a legal proceeding. That does not mean, however, that that legal proceeding, law enforcement, should bleed over into what is... But it did. How can you stand there and say that it's not part of the continuum that started with the initial complaint? I mean, it seems like you're taking a rather hyper-technical approach to what a victim is supposed to do here. If you look at Bellomini v. Zarkany and the other cases I cited, those cases are based on the subsequent proceedings being of a quasi-judicial nature. And that is what is key here. In Bellomini, the court held that allegations to IAD were made in the context of sending the letter and having sent the complaint to a quasi-judicial body for the purpose of instituting criminal procedures. Thus, all the events that happened after the Weiss letter was sent, including defendants' communications with the state's attorney, occurred in the context of a quasi-judicial proceeding. So the court was very clear there that there were protections in place which are necessarily in place if something is considered quasi-judicial. That's not the case here. So when you talk about... ...even though the university is supposed to, by federal law, put these procedures in place? You know, by federal law, they're supposed to put procedures in place. They are not told what procedures should be put into place. So the victim has to decide if the procedures are quasi-judicial or not before repeating the allegation? It really is the victim at his or her peril if they repeat the allegation and it turns out later, in hindsight, somebody like us or a trial court says, well, that's not a quasi-judicial proceeding, so it's not immune. There has to be some protection. I would say that I understand that, but there has to be some protection. Someone cannot go to the police. When you go to the police, you presume that the person is speaking honestly. It's not what the cases say. The person can be completely dishonest and the privilege will apply. In the context of law enforcement, this procedure, this proceeding before the board, was not a law enforcement proceeding. As this court stated, it had to be absolutely immune or it can then transition if this is a quasi-judicial proceeding or a legislative proceeding or some other proceeding that warrants absolute immunity. That's fine. But to say that because someone initially makes a statement to the police, that every time that statement is repeated in subsequent proceedings to whatever parties, to whoever, is absolutely immune, too. It can't be the case that allows no protection, that it's not what law is in Illinois. I want to understand your position. If Ms. Volkowski went to the police, made her allegation against Mr. Visavi, and the State's attorney, however longer, you know, down the road, said, you know what, it's been two years. We really can't, we're not going to file criminal charges in this case. In the meantime, Ms. Volkowski is also pursuing the procedures that the Art Institute has in effect for removing students, which is really her, because what she says is Mr. Visavi is stalking her. She wants to get rid of him. She wants to be done with him. And she's pursuing that. So it's privileged up until the time the State's attorney says we're not going to prosecute, and after that, it's not privileged? It is not privileged unless there are indicia of reliability in the subsequent proceedings. There must be something to protect the victim or the accused from unlawful statements. Look, in Illinois, the Constitution provides that we may speak freely subject to defamation law. That means something. These two victims then had all the protections leading up to the point when the university starts doing what the university is supposed to do under federal law, and then they're supposed to press the mute button, right? They're supposed to not lie is what they're supposed to do. They're supposed to tell the truth. And the way we get to the truth is by ensuring there are some fundamental tenets of fairness that's provided by the school. But they went in and said the same thing to the... We don't know if they said the same thing. You don't have that great of a record here that you're pointing out. I don't even know, was there cross-examination? There's an allusion to cross-examination. There was a hearing, but was it testimony? I mean, it's not like you're giving us the best record to make this sort of... This was on a motion to dismiss. So we didn't have discovery. I barely have discovery now with SAIC. I haven't been permitted to depose anyone yet. So I don't know. No, there was no cross-examination. No, he was not told exactly what these women, what the allegations were. No, he didn't... I'm sure your client would like a lot of discovery. I'm sure he'd like to have more conversation about this. The question is whether or not it ought to go forward. That's what we're here trying to decide on an expanded basis compared to the more confined basis of the certified question the first time around. Yeah, I disagree with that. My client doesn't take any thrill in talking about this, but he believes he's been treated unfairly, and he hired me to try to prosecute that, and that's what I'm doing. It's not a game, and it's not about discovery and getting information from people. But he did have a right to certain fundamental processes that were not given him. And that really goes to SAIC, and we're not arguing about SAIC here. But the fact that there were not quasi-judicial protections in place do mean that we have to be more careful in giving these women absolute immunity. There has to be a balance, and the balance can't be someone can say whatever they want to say, and there are no repercussions. That's not the law in Illinois. It shouldn't be the law in Illinois. There is a very limited exception to law enforcement, and law enforcement and security being law enforcement, fine. That is understandable. But you can't conflate the initial absolute immunity law enforcement with that quasi-judicial immunity that's been recognized where there are indices of reliability and ways we can test whether or not something is true or not. And that is what the court passed away. As a matter of public policy, you're suggesting we change Illinois law. We no longer recognize absolute immunity as a rare thing because here we have an alleged victim, and everybody's on the Me Too bandwagon. No, there's no reason to deviate from established law in Illinois. And your citation of Belt-Halloumi, and it just is not, it says what it says, but if you read that decision, you look at the decision, the decision has to do with quasi-judicial protections. Now, in your appellate decision, you made some quick reference to, you know, this being a similar instance as the Indiana case. Again, there's nothing in the record that suggests that. And this court at this point should not put that in the record. It's simply, simply inappropriate. Quasi-judicial determinations or bodies have to exercise judgment, discretion, the power to hear and determine, ascertain, decide, fact. Binding or make, power to make binding orders and judgments. Power to have personal property rights. That's not, that's not what occurred, or at least the record doesn't reflect that that's what occurred in this case. Now, again, this is not a motion to dismiss, so my allegations in the complaint must be taken as true. And my allegations are that he was not allowed to cross-examine. He was not given any process. He was not told what the allegations were against him. And I'm sorry the court is stuck with that, but it is. And I ask this court to compare Bellomini with Zeit v. Tucker, which is described at length in Bellomini. And that case does show the difference between what the courts would consider a quasi-judicial body and just a complaint to some administrative office. And so the protection afforded to a victim, the privilege afforded to a victim, changes depending on the procedure adopted by the school that she happens to go to over which she has no control. Right? I mean, they don't have any input into what procedures the school uses to determine matters of this type. The law prior to this court's decision was that law enforcement was absolutely immune. So Ms. Wachowski reading her handbook, which she said she did, would have been on notice that reports to campus security would have... But we've already determined that. But what I'm saying is... Beyond that. But you're asking whether she should have been put in this position of having to determine... So she would have known, based on Wachowski v. Zavi 1, that her report to campus security was privileged. Correct. And whether in the course of the investigation that ensued at the School of the Art Institute, her repeated allegations of the same events that she reported to security are privileged depends on the procedure adopted by the School of the Art Institute over which she has no control. She's supposed to determine ahead of time by looking at the handbook, Can I repeat this to the student body board or whatever the entity is that the school delegates this determination to? She's supposed to determine that. I would say that the record is not clear at this point. What she knew, what happened before the board, what was considered. All of those things are questions. The burden is on the victim to determine in advance whether repetition of the allegations against the accused to an internal body investigating them in the school are privileged. The victim has to determine that in advance at her peril. Right? Look, it's either absolute immunity or qualified immunity. She could have been held, it could be qualifiedly immune. She, I think the presumption is that if you make a statement, it should be true. And you are subject to the Constitution. And if you make a false statement, you may be in jeopardy. I don't, I don't, I understand what you're saying. What you're talking about here is three people who are all students at the same school. The alleged misbehavior took place on campus. Okay. And when they first, when the victims first decided to complain, they went to campus security. And then it was campus security said, well, you might want to go to the police, go to the police. But then the campus itself, the administration, follows up on duties that they are prescribed by federal law to undertake to discourage this sort of behavior and to protect people who complain about it. But it's only at the last step that the different standards should apply, according to you. It's not a different standard. I'm asking you to apply the standard that was in place when this occurred, which is that immunity is, absolute immunity is recognized in only very few instances. That absolute immunity is recognized only in the context of law enforcement proceedings, of which the administrative proceeding was not. It was not law enforcement. So you're absolutely privileged when you go to campus police. You're absolutely privileged when you go to the Chicago police. And then, sorry, you get no protection at all when you're in front of the university with the federally prescribed investigation. You are qualifiably privileged that that was the law when this happened. She would have been qualifiably privileged, not absolutely privileged. So as a practical matter then, the victim is going to have a defamation suit whenever she complains to the school, right? I don't understand that. I would assume you would only have a defamation suit if the allegations are false. If the allegations are true, you wouldn't have a defamation suit. It's involving defamation. Well, what the defendant said was absolutely true. It doesn't discourage people from filing lawsuits. That may be the case. But I think the presumption here is that you are presumed to tell the truth. You're presumed to tell the truth. That's what the school had to rely on, that she was telling them the truth, and then they proceeded. So if students know that they can be subject to a lawsuit for defamation for falsely reporting sexual harassment by another student, will that encourage or discourage such reports at schools? I think we need to encourage lawful, truthful reports. There's no doubt that this is an issue. What I am talking about is, as alleged in the complaint, which you're bound to accept at this moment, this was not a truthful, these were not truthful statements. Yes, you're taking the risk, and if you lie about something, you will be held accountable. And I think there is value for all women to know that there are procedures in place for honest complaints, but that if they are not honest complaints, there are repercussions. And even that Indiana case relied on that, that there were repercussions for the person making the falsehood. We don't have that here. The board could have decided that she was not credible, and the repercussion would have been that nothing happened to your client, and she would have been found to be not credible. I don't know if there's a punishment in line with that finding of a board, but it certainly ruins her chances of being found vindicated by the board. So I don't see how this is going to work. So you go to the student police and you complain about behavior, and then what, it just drops off the chart because there's no way to get it forward, there's no way to take it forward without repeating what you said? No, you have to draw a distinction between criminal proceedings. If there was some crime committed, then any statements, as Justice Lavin put out, to the state's attorney, to other counsel, et cetera, those would be absolutely privileged. But here... Except you're forgetting this was on a private school campus with rules that they established, which although it's not clear from any of the briefs in this case, maybe it was in Rezavi 1, that this handbook is given to the students and this court has already decided that once you accept the terms and conditions of the handbook and accept being a student at the school, you're sort of bound by those rules, those are the rules that you live by on campus. And that's fair because it's a private institution, they have a right to say this is what we will tolerate, this is what we won't tolerate. So once the student becomes aware of it in the student guide or the student handbook or however it's given to the students, that also includes the process that they're going to use to hear any problems, which they put in their handbook. It's this board and here's how the board works. Oh, by the way, you have a right to bring an advocate if you want or a person of your choice, you have a right to be there. It outlines the rights of the person who's being accused and it outlines the rights of the person who's doing the accusing. So it doesn't actually, really you need to look and I'll refer you to C-976 and forward. The handbook specifically states that it's not a legal proceeding and she said she read it. So she's on notice that this is not a legal proceeding. This process can take place before, during or after criminal and or civil proceedings related to the same incident. That's at C-976. She's aware of that. The student conduct procedure states that the process is, quote, educational in nature and is not a criminal proceeding. Again, it says it's intended to be educational in nature. It allows the student an opportunity to respond to the complaint through either an administrative meeting or a student conduct board meeting. Both of these options shall be private, shall not require application of the legal rules of information or formal technical rules of evidence applicable to civil and criminal cases or court procedures. That's what she's put on notice. It can be a non-criminal proceeding and still be quasi-judicial for the purpose of finding out what happened on their campus and what this board is going to do about it. That's the whole reason this whole part is there? Sure. If it's quasi-judicial, then she's immune. What they're saying is that it's not a legal proceeding. It's educational in nature. Yeah. I'm sure there's some educating going on. Before you wrap up, let's look at the protective order. Is your client still under that or did it lapse on August 2, 2018? That I don't recall. As recently as – we don't know, we don't know. Maybe your colleagues know. Yeah. As recently as August 2, 2018, your client was held to be somebody who had no business being anywhere near the defendant in this case, right? Based on testimony in a legal proceeding in front of a judge, right? Let me say that I don't want to say anything negative about any judges. I know you've made a right call about your client in this entire situation. I understand that. That's what you're alleging. But my question to you is, at least as recently as August 2, 2018, your client was forbidden from having any contact because of testimony that was given before a judge here in Cook County about the behavior that he had allegedly gotten involved with. True? It depends what you're talking about. Behavior, the only allegations – Non-consensual sex and stalking. No, the non-consensual sex never came before the judge. So just the stalking? Yeah. Okay. So yes. Okay. Partly. She never made allegations under oath that I know of that there was non-consensual sex. Anything else? I'd just like to point out that she made this complaint in early September 2013. That was pretty much long before the Me Too movement got its wind behind its sails. So I don't think that she's grabbing onto that. No, I don't want this court to grab onto it. Well, that's what you said at the beginning. Yeah. No, no. I meant I don't want this court to grab onto it. I want you to maintain the legal principles that this court has followed up until now, and I trust that you'll continue to do so. All right. Thank you. Ms. Roberts? Good morning, Your Honors. On June 1, 2016, this court ruled that Ms. Wolkowski's report of sexual assault to her campus security officers were protected by the absolute privilege under Illinois law. And at that time, this court spoke of the important public policy of ensuring that we protect and encourage our victims who courageously report. Now, in that earlier case, this court was not asked to decide about Ms. Wolkowski and Ms. Zickelman's later statements to their school administrators. However, in that opinion, this court stated that once a privilege statement is made to law enforcement, any subsequent restatements made in furtherance of an investigation fall under that same privilege. It is these subsequent restatements made by these women that are before this court today. And this court should hold that those restatements are protected by the absolute privilege for three independent reasons. The first reason is that these statements were made as part of a continuing investigation. Second, these statements were made pursuant to a legal duty. And third, these statements were made during a quasi-judicial proceeding. Alternatively, if this court is to find that the existing Illinois absolute privilege law does not protect victims who repeat their statements to school administration, this court should extend the absolute privilege and hold that those victims are protected. I want to turn first to the legal proceedings and the investigation that took place at the School of the Art Institute, as that is what much of the discussion in the earlier argument focused on. So Ms. Bowman says that the student handbook, which Ms. Walkuski says she read, says this is all educational. Our follow-up investigation is educational. It's not a legal proceeding. It's not this formal proceeding. So how does that affect the application of the absolute privilege? Ms. Bowman is correct.  However, when we look at the actual proceedings that took place, we see that these are very much quasi-judicial proceedings with the protections that are in place in quasi-judicial proceedings. This court in the Fourth District, excuse me, in Starnes v. International Harvest, laid out those six factors to consider when a proceeding is quasi-judicial. Now, in the earlier proceedings, Mr. Rozavi already conceded that the first two factors laid out in Starnes are present, those factors being the power of whether or not the board had the power to exercise judgment, and second, whether or not the board had the power to hear and determine and decide facts. Now, in Starnes, the Fourth District stated that not all of these six factors must be present, but the more factors that are present, the stronger the court should decide that this is a quasi-judicial proceeding. The record is clear that all six of these factors are present. The third Starnes factor is whether or not the board had the ability to make binding orders and judgments. The record shows on page 998 in the letter that the school sent to Mr. Rozavi that the School of the Art Institute was able to make a binding decision when it expelled Mr. Rozavi from the School of the Art Institute. The fourth Starnes factor is whether or not the board had the ability to affect the personal and property rights of the private individual. Here we see in the letter that the School of the Art Institute sent that not only did they permit Mr. Rozavi from continuing his enrollment at the school, but they also barred him from attending any subsequent events on campus. The fifth Starnes factor is whether or not the board had the ability to examine witnesses, and the record is clear again on page 998 that the board was able to call witnesses and compel them to attend. While it's clear that the record may not indicate exactly what testimony took place, it does show that the board was able to call witnesses and question them. The sixth Starnes factor is whether or not the board had the ability to enforce their decisions and enforce the penalties that they imposed. And again, the record shows us that the school was able to enforce this decision by preventing Mr. Rozavi from entering. Now, the record shows us that the proceeding that took place, while perhaps educational in nature, also was a very serious proceeding that looked to the complaints that Ms. Walkoski made. In the Bellini decision, this court stated that it would defy rationale for a court to isolate different sections of an investigation and provide different levels of protection throughout those investigations. Mr. Rozavi may be arguing that while Ms. Walkoski and Ms. Zickelman's initial statement made to campus security is bound by the absolute privilege, but somehow that later throughout the investigation, the levels of privilege should change. But this has never been what this court has held. That is not the standard under Illinois law, as this court articulated in the earlier opinion in this case. And while Mr. Rozavi may make statements that really what this court needs to do is uphold the standard that's always been in place, that's exactly what we're asking this court to do, to hold that once victims courageously report, that we don't punish them for participating in that investigation, but instead, we still continue to protect them. I also want to point out that much of the earlier argument by Mr. Rozavi's counsel focused on whether or not victims make true statements or false statements. The Indiana court considered this exact issue when analyzing the investigation that took place in Hartman v. Cary. There, the Indiana Supreme Court considered whether or not there were any sort of protections in place to, in effect, punish or discourage individuals who make false reports. There, the Indiana Supreme Court did not reach a conclusion that, for some reason, if an individual participates in an investigation, that that individual must receive less protection and be protected by a qualified immunity. Rather, the Indiana Supreme Court stated that the fact that Purdue University had a standard for punishing students who falsely reported in the school system, that was enough of a deterrent. Here, that same protection exists. The School of the Art Institute handbook shows that if an individual falsely reports misconduct, that student is bound and considered to have violated the school conduct policy and under those same punishments. So, the School of the Art Institute already had protections in place. Because Ms. Walkoski's statements and Ms. Ekelman's statements were made pursuant to, as part of an ongoing investigation, that those statements should be protected by the absolute privilege, just as other statements to law enforcement are protected. The second reason that the statements made by Ms. Walkoski and Ms. Ekelman should be protected by the absolute privilege is because those statements were made pursuant to a legal duty. As your honors pointed out in the earlier argument, the School of the Art Institute was bound by both federal and state law to conduct an investigation. Illinois and the nation as a whole has taken a realization that sexual assault and sexual violence on campus is a significant problem and therefore we require that our institutions of higher education conduct investigations. Under federal law, schools like the School of the Art Institute are required to follow up on reports of sexual assault. In fact, they must report numbers at the end of the year to show what happens when students make those statements. Further, once a student makes a report of sexual assault, federal law requires that the school meet with that student and thus discuss different options for that student, whether that's pursuing a conduct hearing or changing their housing requirements. The School of the Art Institute was bound by law to conduct an investigation. Further, the policies laid out in the School of the Art Institute handbook state specifically who a student should speak to. The handbook states that students should go to the Vice President of Student Affairs and the Dean of Students. That's exactly who these women went to. After the school followed up on their reports to campus security, these women spoke to people who are laid out in their school handbook as responsible for conducting the investigation. But the required by law exception, doesn't it apply to the statements by the victim that those statements are required by law? I understand that the university is required by law to conduct an investigation, but the victim could say, I don't want to cooperate. Yes, Your Honor, that's true. Ms. Volkowski and Ms. Echelman were not required by law to courageously report what happened on their campus. However, how can we hold our schools responsible to investigate these crimes, but then punish students and hold them liable if they choose to participate? How can schools conduct a fair and thorough investigation if victims are terrified to participate in those investigations? The third reason that the absolute privilege protects the statements made by Ms. Volkowski and Ms. Echelman is that these statements were made during a quasi-judicial proceeding. And I won't go through those six factors again as we've already discussed them. But the statements made by these women were made in the investigation leading up to the quasi-judicial proceeding and during that hearing that was conducted by the board. This court held in Maloney that statements made preliminary to and during a quasi-judicial proceeding are protected by the absolute privilege. And other courts have extended that privilege to similar investigations. Alternatively, if this court were to decide that our existing absolute privilege law does not extend to these statements, we respectfully ask that this court extend the absolute privilege law to protect students who report their sexual assaults to their school administration. The reason that absolute privilege exists, as stated by the court in Stearns v. International Harvest, is that we do not want the person who is making the statement to be detoured because of a fear of civil lawsuits. And that is why today we should protect women like Ms. Volkowski and Ms. Echelman and hold that when they participate in that investigation, that they should not be afraid to participate in that investigation. Other states like Indiana, Maryland, California, and New York have similarly held that when students participate in a school's investigation into a sexual assault or sexual violence, that those students are protected by the absolute privilege. And for this reason, we ask that this court not frustrate those investigations, but instead continue to support students and hold that their statements to school administrations are protected by the absolute privilege. Thank you, Your Honors. Thank you. Ms. Baldwin? I hope this court understands that what counsel just admitted to asking Your Honors to do is to extend the absolute privilege beyond what it is currently in Illinois. And as I noted, there is really no reason to do so, particularly given the fact in this case that she was put on notice that this was an informal educational process and so forth. Restatements of a crime are indeed privileged within the singular proceeding. In this case, don't be confused. We're not talking about a criminal proceeding. We're not talking about anything other than a student conduct hearing. That is not a continuation of the legal proceedings that was initiated originally with the complaint to law enforcement. In Hartman, the Indiana case, the court made very specific findings, which again get to the reasons behind, get to the quasi-judicial protections in place and why that case arguably holds the way the court held. For instance, the complaint in that case had to be filed within 120 days of the incident. Here, even though the complaint, according to the handbook, needed to be filed within a year, then two years later after the alleged incident, we see a complaint. How is it possible for anyone to defend something like this as we've seen after years? The investigator conducted a thorough fact-finding investigation in Hartman. They interviewed witnesses, many witnesses, 13 current and former students in the counselor education program and so forth. The board didn't make finding decisions. Counsel indicated that the board had authority to make finding decisions and so forth. No. The handbook is clear that the decision, that they do not make a final decision. They make a recommendation, and in this case to Felice Dublon, who made the final decision, an individual who in her discretion could have done and did whatever she wanted to do. So this is not a board that's hearing evidence and determining this, that, or the other. This is Felice, the one person in her sole discretion. Justice Ginsburg was asked in an interview about her thoughts on how to balance, in this case, due process against the need for increased gender equality. And she said, it's not one or the other, it's both. We have a system of justice where people who are accused get due process. So it's just applying to this field what we have applied generally. That's what I'm asking you to do, to apply in this case what we have done in Illinois generally and recognize the interest of both the alleged victim and some of the uncertainty that they may face, but also the rights of the accused who may be wrongfully accused. Thank you. Thank you. Thank you very much for your arguments here this morning and your briefs. We will take the matter under advisement. We'll stand in recess briefly.